UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SHANNON MARIE KERR                                                                         Plaintiff,

v.                                                                    Civil Action No. 3:18-cv-241-RGJ

COMMISSIONER OF SOCIAL SECURITY                                                            Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Shannon Marie Kerr ("Kerr") filed this action seeking review of the denial of disability insurance benefits by Defendant Commissioner of Social Security ("Commissioner"). [DE 1]. The Court referred Kerr's action to Magistrate Judge H. Brent Brennenstuhl ("Magistrate Judge"). [DE 11]. After Kerr filed a motion for summary judgment, the Magistrate Judge issued Findings of Fact, Conclusions of Law and Recommendation ("R&R") that the Commissioner's decision be affirmed. [DE 14]. Kerr objected, arguing that the Magistrate Judge incorrectly found that Administrative Law Judge Roger L. Reynolds's ("ALJ") failure to articulate "good reasons" was harmless error. [DE 15 at 713] ("It is submitted that the finding of harmless error by the Magistrate Judge regarding the Administrative Law Judge's failure to sufficiently articulate good reasons for discounting the treating physicians' opinions in this case is error"). The Commissioner responded [DE 16]. This matter is ripe. For the reasons below, the Court **OVERRULES** Kerr's Objections [DE 15], and **ACCEPTS** the Magistrate Judge's R&R without modification [DE 14].

I.      BACKGROUND[1]

Kerr applied for disability insurance benefits (DIB) in November, 2014, alleging that she has been disabled since August, 2014. [DE 8-2 at 49]. After the Commissioner denied her claim

---

[1] The R&R accurately sets forth the factual and procedural background of the case and is incorporated by reference. [DE 14 at 700–701].

1

both initially and upon reconsideration, Kerr appeared before the ALJ. *Id.* at 49. The ALJ ruled against Kerr and found:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since August 20, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: obesity; migraine headaches; seizure disorder; chronic neck and low back pain status post C5-6 discectomy and fusion, and L5/S1 discectomy and fusion; chronic fatigue syndrome; diverticulosis; history of kidney stones; bilateral carpel tunnel syndrome; adjustment disorder with mixed anxiety and depressive symptoms (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant *has the residual functional capacity to perform less than the Full Range of sedentary work* as defined in 20 CFR 404.1567(a). The claimant can occasionally lift/carry up to 10 pounds, frequently less than 10 pounds; requires a sit/stand option with no prolonged standing or walking in excess of thirty minutes without interruption, no sitting in excess of one hour without interruption; no climbing of ropes, ladders or scaffolds, occasional climbing of stairs or ramps, occasional balancing, stooping, kneeling, crouching or crawling, no aerobic activities such as running or jumping, no work with hands over the head; no operations of foot pedal controls; no exposure to concentrated temperature extremes, excess humidity, concentrated vibration or industrial hazards; no commercial driving and no work at heights; requires entry level work with simple repetitive procedures, can tolerate only occasional changes in work routines, and should work in an object oriented environment with only occasional and casual contact with coworkers, supervisors or the general public.

*Id.* at 51-53 (emphasis added).

When the Appeals Council declined to review the ALJ's decision in February, 2018, the ALJ's decision became the final decision of the Commissioner. [DE 12 at 671]; *Clore v. Astrue*,

No. 1:08CV77-J, 2009 WL 1010875, at *2 (W.D. Ky. Apr. 14, 2009) (citing *Cotton v. Secretary*, 2 F.3d 692, 696 (6th Cir., 1993)). Kerr brought this action to obtain judicial review of the Commissioner's decision. [DE 1 at 2]. After reviewing the record and relevant law, the Magistrate Judge found that the ALJ erred by not adequately explaining the weight he gave to Kerr's treating physician's opinions, but that the error was harmless. [DE 14 at 710]. The Magistrate Judge therefore recommended that the Court affirm the Commissioner's decision, deny Kerr's motion for summary judgment, and dismiss Kerr's complaint. [DE 14]. Kerr objects. [DE 15].

## II. STANDARD

Under 28 U.S.C. § 636(b)(1)(B), a district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of facts and recommendations for the disposition" of matters including review of the Commissioner's final decision on disability insurance benefits. This Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the Court may accept, reject, or modify the proposed findings or recommendations of the magistrate. *Id.*

Judicial review of the Commissioner's final decision is limited to determining whether the findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there

is a zone of choice within which the decision makers can go either way, without interferences by the courts." *Mackins v. Astrue*, 655 F.Supp. 2d 770, 775 (W.D. Ky. 2009) (quoting *Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986)). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, No. 98–3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999). In reviewing the case for substantial evidence, the court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 946 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1986)).

## III. DISCUSSION

To determine whether an individual is entitled to disability benefits, an ALJ follows the process outlined in 20 C.F.R. § 404.1520. First, the ALJ considers whether the claimant has substantial gainful employment. 20 C.F.R. § 404.1520(a)(4). Second, the ALJ considers whether the claimant has suffered from a severe medically determinable physical or mental impairment, or combination of impairments, for a certain duration. *Id.* Third, the ALJ considers whether the impairments meet or equal one of the specific medical disorders listed in the regulations. *Id.* Fourth, the ALJ assesses the claimant's RFC and past relevant work. *Id.* Fifth, the ALJ determines whether given the claimant's RFC, age, education, and work experiences, the individual can make certain adjustments to keep working. *Id.* While the claimant bears the burden of proof in establishing steps one through four, "the burden . . . shifts to the Commissioner at step five to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.'" *Nejat v. Comm'r of Soc.*

4

*Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

Kerr objects to the ALJ's finding at step five of the disability determination. Kerr argues that the ALJ erred when he failed to consider properly the medical opinions of her physicians, Dr. Garcia and Dr. Siddiqui (collectively, the "treating physicians"). [DE 12-1 at 680].

Dr. Garcia, a neurologist, diagnosed Kerr with chronic fatigue syndrome, peripheral neuropathy, Epstein-Barr virus infection, common migraine headaches, and seizure disorder. [DE 8-2 at 54-55]. Dr. Garcia filled out a Headaches Residual Functional Capacity Questionnaire. *Id.* at 56. According to Dr. Garcia, symptoms associated with Kerr's headaches include "vertigo, nausea/vomiting, malaise, photosensitivity, visual disturbances, mood changes and mental confusion/inability to concentrate." *Id.* Dr. Garcia opined that Kerr had the following physical limitations: "unable to sit, stand, walk, lift, bend, stoop, use arms, hands, fingers, limited vision, difficulty hearing, need to avoid temperature extremes, wetness, humidity, noise, dust, fumes, gases or hazards, etc." *Id.* at 57. Dr. Garcia further opined that Kerr is "incapable of even 'low stress' jobs, as she gets confused, disoriented, and forgetful." *Id.* at 57.

Dr. Siddiqui, a rheumatologist, diagnosed Kerr with fibromyalgia and cervical degenerative disc disease. *Id.* at 57. He filed out a Fibromyalgia Residual Functional Capacity Questionnaire. *Id.* On the Fibromyalgia Questionnaire, Dr. Siddiqui noted that her prognosis was "chronic pain and fatigue," with pain severe enough to "interfere with attention and concentration." *Id.* Kerr's physical symptoms were "multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent, severe headaches, vestibular dysfunction, numbness and tingling, sicca symptoms, carpel tunnel syndrome and chronic fatigue syndrome." *Id.* Kerr would have "severe limitation[s] in her ability to deal with work stress." *Id.*

5

Dr. Siddiqui opined that "she could walk less than one block, sit for 30 minutes at one time for less than two hours total in an eight-hour workday and stand for 30 minutes, for less than two hours total in an eight-hour workday." *Id.* She could "occasionally lift/carry 10 pounds or less." His overall opinion was that she "could not work." *Id.*

The ALJ "accorded little weight" to the opinions of Kerr's treating physicians "as their opinions appear to be based primarily on the claimant's subjective assertions." *Id.* at 59. On the other hand, the ALJ "accord[ed] great weight to the opinions of the consultative examiner Dr. Brenda Parker as it is consistent with the medical evidence and based on her evaluation." *Id.* Kerr argues that the ALJ erred when he failed to provide "good reasons" for the weight he gave to the medical opinions of her treating physicians. [DE 12-1 at 681-682]. Kerr argues that the ALJ should have given the opinions of her treating physicians "controlling weight." *Id.* at 681. Kerr argues that because the ALJ erred in not given "controlling weight" to those opinions, his finding at step 5 that she could perform some sedentary work was not supported by substantial evidence. *Id.* at 684.

In his R&R, the Magistrate Judge found that the ALJ erred at step five by not providing "good reasons," but that the error was harmless because the ALJ's "careful consideration of the relevant medical evidence strongly implies he had sufficient reasons for rejecting the treating sources' opinions for controlling weight, even if they were not explicitly articulated." [DE 14 at 710]. Thus, there are two issues here: 1) Did the ALJ sufficiently articulate "good reasons" for not according controlling weight to the treating physicians' opinions? and 2) If not, was the ALJ's failure to do so harmless error?

### 1. The ALJ failed to articulate "good reasons" for not according controlling weight to the treating physicians' opinion.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the so-called 'treating physician rule,' which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (citing *Blakley v. Comm'r*, 581 F.3d 399, 406 (6th Cir.2009)). An ALJ must give treating-source opinions "controlling weight" if the opinion is 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and 2) "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ does not give controlling weight to the treating physician's opinion, he must still consider how much weight to give it by taking into account:

> [T]he length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairment(s), the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and any other relevant factors tending to support or contradict the opinion.

*Friend*, 375 F. App'x at 550 (6th Cir. 2010).

"The ALJ's decision as to how much weight to accord a medical opinion must be accompanied by 'good reasons' that are 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5).

The parties do not dispute that Dr. Garcia and Dr. Siddiqui were Kerr's treating physicians, and that the ALJ did not give their opinions controlling weight. Thus, the Court must determine whether the ALJ provided "good reasons" for his determination to not give those opinions controlling weight. The Court finds that the ALJ did not provide "good reasons" for this decision

in his one-sentence explanation for it: "The undersigned accorded little weight to the opinions of [the treating physicians] as their opinions appear to be based primarily on the claimant's subjective assertions." [DE 8-2 at 59]. This is not "sufficiently specific" to meet the procedural requirements of the treating physician rule. *See Friend*, 375 F. App'x at 551 (finding that the ALJ did not provide "good reasons" by stating, without more, that the consulting expert's opinions were more consistent with the objective clinical findings than the treating source's were); *see also Rogers*, 486 F.3d 234, 245–46 (6th Cir. 2007) (finding that the ALJ did not provide "good reasons" by stating, without more, that the "record does not support the limitations of severity suggesting by the [treating source]"). Because the ALJ failed to provide sufficient justification for the weight given to the opinions of Kerr's treating physicians, his decision in this regard did not meet the requirements of 20 C.F.R. § 416.927, and therefore cannot serve as substantial evidence.

**2. The ALJ's failure to articulate "good reasons" was harmless error.**

Even if the ALJ fails to give "good reasons," remand and reversal is not required if the failure to do so is harmless. The Sixth Circuit has identified three circumstances where the failure to give "good reasons" may amount to harmless error: (1) "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Friend*, 375 F. App'x at 551 (quoting *Wilson*, 378 F.3d 541, 547 (6th Cir. 2004)). "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or *its consistency with other evidence in the record*, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the

8

claimant's ailments." *Id.* (emphasis added). In other words, when determining whether the ALJ has met the goal of § 1527(d)(2), the court should review the decision to see if it "implicitly provides sufficient reasons" for rejecting the treating source's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005). "Thus the procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend*, 375 F. App'x at 551.

Kerr argues the Magistrate Judge erred in finding that the ALJ's failure to provide "good reasons" was "harmless error" because "the treatment records and opinions of Garcia and Siddiqui constitute substantial evidence . . . which . . . supports and corroborates the testimony of the Plaintiff regarding her symptoms and limitations." [DE 15 at 718]. Kerr further asserts that:

> In essence, the Administrative Law Judge made his decision based upon the mental status evaluation conducted by Parker and simply disregarded the treatment records and opinions of the treating physicians . . . in their entirety by stating that they carried no weight because they were based on Plaintiff's subjective assertions. This basically provides no analysis or explanation of the treating physicians' treatment records or opinions, and clearly violates § 1527(d)(2) and does not amount to harmless error." *Id.* at 718-719.

The Court disagrees. Although the ALJ has not complied with the "letter" of the regulation, he has complied with its "goal" by "implicitly provid[ing] sufficient reasons" for the weight given to the treating physicians' opinions. The ALJ erred by plotting the dots, but not connecting them. That said, throughout the decision, the ALJ suggests the connections between them by documenting how the treating physicians' opinions are unsupported by and inconsistent with other evidence. In so doing, the ALJ "indirectly attacks" their opinions. *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (finding that the ALJ's failure to provide "good reasons" was harmless error) ("[T]he ALJ's evaluation of Nelson's mental impairments indirectly attacks

claimant's ailments." *Id.* (emphasis added). In other words, when determining whether the ALJ has met the goal of § 1527(d)(2), the court should review the decision to see if it "implicitly provides sufficient reasons" for rejecting the treating source's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005). "Thus the procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend*, 375 F. App'x at 551.

Kerr argues the Magistrate Judge erred in finding that the ALJ's failure to provide "good reasons" was "harmless error" because "the treatment records and opinions of Garcia and Siddiqui constitute substantial evidence . . . which . . . supports and corroborates the testimony of the Plaintiff regarding her symptoms and limitations." [DE 15 at 718]. Kerr further asserts that:

> In essence, the Administrative Law Judge made his decision based upon the mental status evaluation conducted by Parker and simply disregarded the treatment records and opinions of the treating physicians . . . in their entirety by stating that they carried no weight because they were based on Plaintiff's subjective assertions. This basically provides no analysis or explanation of the treating physicians' treatment records or opinions, and clearly violates § 1527(d)(2) and does not amount to harmless error." *Id.* at 718-719.

The Court disagrees. Although the ALJ has not complied with the "letter" of the regulation, he has complied with its "goal" by "implicitly provid[ing] sufficient reasons" for the weight given to the treating physicians' opinions. The ALJ erred by plotting the dots, but not connecting them. That said, throughout the decision, the ALJ suggests the connections between them by documenting how the treating physicians' opinions are unsupported by and inconsistent with other evidence. In so doing, the ALJ "indirectly attacks" their opinions. *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (finding that the ALJ's failure to provide "good reasons" was harmless error) ("[T]he ALJ's evaluation of Nelson's mental impairments indirectly attacks

claimant's ailments." *Id.* (emphasis added). In other words, when determining whether the ALJ has met the goal of § 1527(d)(2), the court should review the decision to see if it "implicitly provides sufficient reasons" for rejecting the treating source's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005). "Thus the procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend*, 375 F. App'x at 551.

Kerr argues the Magistrate Judge erred in finding that the ALJ's failure to provide "good reasons" was "harmless error" because "the treatment records and opinions of Garcia and Siddiqui constitute substantial evidence . . . which . . . supports and corroborates the testimony of the Plaintiff regarding her symptoms and limitations." [DE 15 at 718]. Kerr further asserts that:

> In essence, the Administrative Law Judge made his decision based upon the mental status evaluation conducted by Parker and simply disregarded the treatment records and opinions of the treating physicians . . . in their entirety by stating that they carried no weight because they were based on Plaintiff's subjective assertions. This basically provides no analysis or explanation of the treating physicians' treatment records or opinions, and clearly violates § 1527(d)(2) and does not amount to harmless error." *Id.* at 718-719.

The Court disagrees. Although the ALJ has not complied with the "letter" of the regulation, he has complied with its "goal" by "implicitly provid[ing] sufficient reasons" for the weight given to the treating physicians' opinions. The ALJ erred by plotting the dots, but not connecting them. That said, throughout the decision, the ALJ suggests the connections between them by documenting how the treating physicians' opinions are unsupported by and inconsistent with other evidence. In so doing, the ALJ "indirectly attacks" their opinions. *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (finding that the ALJ's failure to provide "good reasons" was harmless error) ("[T]he ALJ's evaluation of Nelson's mental impairments indirectly attacks

both the supportability of [the treating physician's] opinions and the consistency of those opinions with the rest of the record evidence"). Evidence that supports the ALJ's finding that Kerr is able to work necessarily undermines evidence that she is unable to do so. Thus, the treating physicians' opinion that she is disabled is indirectly attacked by the ALJ's discussion of Kerr's activities of daily living, especially her ability to take care of her family, and the objective evidence in her case, including diagnostic scans and physical examination results. *See Sims v. Comm'r of Soc. Sec.*, No. 2:16-CV-342, 2017 WL 4236578, at *10 (S.D. Ohio Sept. 25, 2017) (finding that the ALJ implicitly provided enough reasons by citing claimant's activities of daily living and objective evidence, including diagnostic scans and physical examination records). By indirectly attacking Dr. Garcia's and Dr. Siddiqui's opinions, the ALJ provided substantial evidence to support his residual functional capacity finding at step 5 and his conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . [t]he evidence generally does not support the alleged loss of functioning." [DE 8-2 at 58].

  *a. Activities of daily living*

  The ALJ indirectly attacked the treating physicians' opinions by implicitly juxtaposing Kerr's participation in activities of daily living with their opinions that she was unable to work because of physical and emotional limitations. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments"). Kerr is able (for the most part) to take care of herself and her family. Dr. Garcia opined that Kerr is "unable to sit, stand, walk, lift, bend, stoop, use arms, hands, fingers." [DE 8-2 at 57]. Likewise,

Dr. Siddiqui opined that Kerr "could walk less than one block, sit for 30 minutes at one time for less than two hours total in an eight-hour workday and stand for 30 minutes, for less than two hours total in an eight-hour workday." *Id.* But, as suggested by the ALJ, Kerr does not appear to have these limitations when she is at home. She can bathe and dress herself. *Id.* at 55. She can walk for up to 20 minutes. *Id.* at. 53. She can "complete light household chores intermittently with rest as needed." *Id.* at 55. She can do laundry. *Id.* at 53. She can prepare simple meals for her family. *Id.* at 55. She gets her children ready for school, helps them with their homework, reads to them, and puts them to bed. *Id.* at 53. In the decision, the ALJ implied that if she had the substantial limitations opined by Dr. Garcia and Dr. Siddiqui, she could not participate in these activities. *Id.* at 59 ("In sum, the above residual functional capacity assessment is supported by the claimant's ability to care for others during the relevant period . . ."); *See Jones v. Colvin*, No. CIV.A. 2013-223 WOB-, 2015 WL 2355964, at *7 (E.D. Ky. May 15, 2015) (finding that the ALJ's failure to give "good reasons" was harmless error and stating that the "ALJ noted [claimant's] own testimony of her daily activity further discredited [the treating physician's] assessment: Plaintiff stated that she cooks breakfast, vacuums, shops, cleans, does laundry, washes dishes, cares for her personal needs, and plays video games with her daughter.").

Dr. Garcia opined that Kerr was "incapable of even 'low stress' jobs, as she gets confused, disoriented, and forgetful." [DE 8-2 at 57]. Dr. Siddiqui echoed this opinion: Kerr's prognosis was "chronic pain and fatigue," with pain constantly severe enough to "interfere with attention and concentration." *Id.* Even so, when at home, Kerr can "pay attention for 30 to 40 minutes, finish[] what she starts, and can follow written and spoken instructions, although she may reread a couple of times and ask questions to make sure of herself before starting." *Id.* at 53. And she can manage money: she pays bills, handles a saving account, and uses a checkbook. *Id.* at 53, 55; *See Helm v.*

11

*Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("[T]he ALJ discounted [the treating physician's] assessment in part because [the claimant] 'continues to perform significant activities around the house,' which, according to the ALJ, was also inconsistent with a finding of total disability.").

    *b. Objective evidence*

Over the course of five pages in the decision, the ALJ provided a detailed chronology of Kerr's ailments and treatment, noting throughout numerous instances in which Kerr's claims about her symptoms were contradicted by objective evidence. *See Congrove v. Comm'r of Soc. Sec.*, No. 2:15-CV-2630, 2016 WL 3097153, at *6 (S.D. Ohio June 3, 2016) (collecting cases) (In the cases "where harmless error in this context is found, the ALJ cites to competing physician opinions and relies on objective medical evidence as a basis for the weight given to the treating physician's opinion"); *see Nelson*, 195 F. App'x at 466 (finding harmless error) (discussing the evidence in the case over five and a half pages). In so doing, the ALJ indirectly attacked the supportability of Dr. Siddiqui's and Dr. Garcia's opinions and the consistency of those opinions with the rest of the record. *Id.* at 470-471 (The "ALJ's discussion of the record evidence shows that the ALJ found the opinions of [the treating physicians] to be inconsistent with the other record evidence" and the ALJ indirectly attacked the treating physicians' opinions by noting that "there are no clinical and diagnostic findings to establish [that the claimant] has conditions that would significantly compromise his RFC").

The ALJ discussed how Kerr's claims were contradicted by diagnostic tools. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) (finding that the ALJ indirectly attacked the treating physician's opinion by noting that objective medical evidence does not support it). Kerr complained to Dr. Garcia of neck pain, but the MRI of her neck and brain was

unremarkable. [DE 8-2 at 55]. She complained "she was getting worse and weaker especially in the upper extremities," but on examination her muscle strength in both her upper and lower extremities was +4/5 out of 5/5, and she was not "in any form of distress." *Id.* The ALJ noted that, despite having +4/5 out of 5/5 muscle strength, Dr. Garcia "felt that [Kerr] would not be able to hold gainful employment" and encouraged her to "go ahead and apply for disability." *Id.* Kerr complained to Dr. Siddiqui of knee pain, but "radiographs of. . . [her] . . . right knee . . . showed no abnormalities to explain knee pain," and "straight leg raising was negative." *Id.* at 56.

The ALJ also detailed how Dr. Garcia's opinion about Kerr was inconsistent with his own examination. Dr. Garcia opined that Kerr was unable to work because she gets confused and disoriented, but on exam she was "awake and alert . . . [h]er responses were coherent and relevant, she was aware of what was going on around her, and was able to understand and follow verbal commands." *Id.* at 55. Dr. Garcia opined that Kerr had severe physical limitations. During an appointment with Dr. Garcia, Kerr "could hardly move both upper and lower extremities," but at the end of the appointment she was able to "stand up by herself with no help." *Id.* at 54. During an office visit, Kerr reported to Dr. Garcia that she had "aches and pain all over her body, numbness in her feet and legs and headaches. She reported she could feel the metal plate that was in her neck. She appeared to be ran down and tired." *Id.* at 55. But, when she returned to his office five days later, she asked him to fill out her disability application and "looked better, awake, more alert and more rested." *Id.*

Finally, the ALJ indirectly attacked the treating physicians' opinions by discussing how Kerr's complaints were contradicted by Dr. Parker's evaluation of her. *See Hitdlebaugh v. Comm'r of Soc. Sec.*, No. 10-CV-13115, 2011 WL 2601115, at *15 (E.D. Mich. Apr. 29, 2011) (finding ALJ indirectly attacked treating physician's opinion by discussing how consulting psychologist's

13

evaluation contradicted it); *see Feigenbaum v. Comm'r of Soc. Sec. Admin.*, No. 1:12-CV-2605, 2014 WL 201483, at *4 (N.D. Ohio Jan. 17, 2014) (finding ALJ indirectly attacked treating physician's opinion by discussing how consulting psychologist's evaluation contradicted it) ("The ALJ also relied upon [a consulting psychologist] who opined that Plaintiff had no limitations in understanding, remembering, carrying out simple job instructions, which undermined [the treating physician's] finding of moderate limitations in these areas"). Despite claims of depression and anxiety, Kerr "achieved a score in the normal range" on the Beck Depression Inventory and the Beck Anxiety Inventory. *Id.* at 55. The ALJ noted that these scores were inconsistent with "patient presentation, patient self-report in clinical interview, or with collateral report in clinical interview." *Id.* Moreover, her "overall score on a neurocognitive screening measure, the MMSE, was fully normal." *Id.* Both Dr. Garcia and Dr. Siddiqui opined that Kerr had memory, attention, and concentration deficits. *Id.* at 57. But Dr. Parker opined that in "regard to gainful employment" Kerr "should have no difficulty with attention or memory per se for purposes of task completion." *Id.* at 55. Moreover, Kerr admitted to Dr. Parker that "she had much-improved symptoms including improved headache after surgery on August of 2013. She was no longer taking narcotics and her strength was considered good." *Id.* at 55. Kerr also disclosed that she had "mild loss of energy, mild changes in sleep, mild loss of pleasure, and mild guilt." *Id.*

## IV.     CONCLUSION

The ALJ erred by failing to provide "good reasons," but the error was harmless, and no "principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Weyand v. Colvin*, No. 4:13-CV-00414, 2013 WL 5939779, at *12 (N.D. Ohio Nov. 5, 2013) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.); *see also Kobetic v. Comm'r*

14

*of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir.2004) (quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.") (internal quotation marks omitted).

The Court accepts the Magistrate's Judge recommendation and adopts, as its own, his succinct explanation for it:

> The ALJ's careful consideration of the relevant medical evidence strongly implies he had sufficient reasons for rejecting the treating sources' opinions for controlling weight, even if they were not explicitly articulated. The ALJ identified several instances where the treating physicians' opinions were inconsistent with objective medical tests they conducted themselves. The ALJ articulated the Plaintiff's medical history in detail and made clear he considered the length, frequency, nature, and extent of the treatment relationships with the treating physicians' – and compared their opinions with the rest of the relevant medical evidence in the record. Therefore, the opinion met the goal of 20 C.F.R. §404.1527(d)(2), if not the letter of the regulation. The inconsistencies between the Plaintiff's subjective presentation of her symptoms and the objective medical evidence provided substantial evidence to deny Plaintiff's claim.

[DE 14 at 710].

Thus, for the stated reasons above,

**IT IS ORDERED** that Kerr's Objections, [DE 15], are **OVERRULED** as set forth herein; and

**IT IS FURTHER ORDERED** that the Report and Recommendation of the United States Magistrate Judge, [DE 14], is **ACCEPTED** without modification as the findings of fact and conclusions of law of this Court.